IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, ) <br> ) <br>    Plaintiff, ) <br> ) <br> v. ) <br> ) <br> 1.40 ACRES OF LAND, OWNED BY ) <br> MARY ELLEN RIVES, ) <br> ) <br>    Defendants. ) | Civil Action No. 7:19-cv-160 <br><br> By: Elizabeth K. Dillon <br>     United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mountain Valley Pipeline (MVP) is constructing an interstate natural gas pipeline. MVP commenced a condemnation action under the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, to acquire permanent and temporary easements on numerous properties, including this property located in Roanoke County. On March 7, 2018, the court entered orders in the primary condemnation case, *Mountain Valley Pipeline LLC v. Easements to Construct,* Case No. 7:17-cv-492 (W.D. Va.) (Dkt. No. 594), granting MVP immediate possession of the easements on this property.

MVP filed an omnibus motion in limine (Dkt. No. 6) and a motion to exclude some of the expert testimony of Dennis Gruelle (Dkt. No. 5). The court held a hearing on these motions and took the motions under advisement. Very recently, defendant has filed two unopposed motions – a motion in limine to allow her to open and close and sit closest to the jury because she has the burden of proof (Dkt. Nos. 16 and 17) and a motion for a jury view (Dkt. No. 18). For the reasons stated below, MVP's motion to exclude Gruelle's testimony is granted and MVP's motion in limine is granted in part and denied in part. Defendant's unopposed motions will be granted.

I.  BACKGROUND

On October 13, 2017, the Federal Energy Regulatory Commission (FERC) issued an order for MVP to construct, maintain, and operate a natural gas pipeline along a route that includes the Property (the Approved Route).  On October 24, 2017, MVP filed an action to condemn easements along the Approved Route on the Property (Easements) under Section 7 of the Natural Gas Act, 15 U.S.C. § 717f.  On October 27, 2017, MVP moved for partial summary judgment that it is authorized to condemn the Easements and a preliminary injunction granting immediate possession for construction.  On January 31, 2018, the court issued a memorandum opinion and order granting MVP's motion for partial summary judgment and conditionally granting MVP's motion for immediate possession upon a determination of appropriate security.  On March 7, 2018, the court set deposits and bonds for the Property and granted MVP immediate possession of the Easements effective upon making the required deposit and posting the required bond.

MVP has condemned an easement over a tract owned by defendants, identified in the main pipeline case complaint as MVP Parcel Nos. VA-RO-051 (the Property).  MVP is taking temporary workspace of 0.33 acres, additional temporary workspace of 0.55 acres, and a permanent easement of 0.52 acres for a total of 1.40 acres.  (Dkt. No. 594.)

II.  DISCUSSION

**A.  Legal Standards**

The motions present various issues of just compensation in eminent domain cases as well as issues involving the qualification of experts and their reliability and relevance.  Legal standards regarding the same are set forth herein.

**1. Just compensation for partial permanent takings, including severance damages**

The Takings Clause of the Fifth Amendment prohibits the taking of private property without just compensation. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536 (2005). When the government condemns private property for a public purpose, it must pay just compensation for that property. Just compensation is the monetary equivalent of the property taken, and the federal courts have employed the concept of "fair market value" to determine the condemnee's loss. *United States v. 564.54 Acres of Land*, 441 U.S. 506, 510–11 (1979); *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 473–74 (1973).

Unless otherwise proscribed by Congress, federal law governs "questions of substantive right, such as the measure of compensation" for federal courts in condemnation proceedings. *United States v. Miller*, 317 U.S. 369, 379–80 (1942). *See also Tenn. Gas Pipeline Co. v. Permanent Easement for 1.7320 Acres*, No. 3:cv-11-028, 2014 WL 690700 (M.D. Pa. Feb. 24, 2014) (unpublished) (concluding that federal law applies in determinations of just compensation under the Natural Gas Act). The Fourth Circuit defines just compensation in a case of partial taking as "the value of the land taken plus the depreciation in the market value of the remainder." *United States v. 97.19 Acres of Land*, 582 F.2d 878, 881 (4th Cir. 1978) (citing *W. Va. Pulp & Paper Co. v. United States*, 200 F.2d 100, 104 (4th Cir. 1952)). Moreover, "value [of the condemned land] is to be ascertained as of the date of taking." *Miller*, 317 U.S. at 374.

In *W. Va. Pulp & Paper*, the Fourth Circuit recognized the well-settled principle that "whenever there has been an actual physical taking of a part of a distinct tract of land, the compensation to be awarded includes not only the market value of that part of the tract appropriated, but the damage to the remainder resulting from that taking, embracing, of course, injury due to the use to which the part appropriated is to be devoted." 200 F.2d at 102. The court

3

recognized that the landowner was damaged not only by the loss of the land, but also by the proposed use that caused depreciation to the remainder, and therefore was entitled to be awarded a sum that "would put it in as good position pecuniarily as it would have been if its property had not been taken." *Id.* at 103. The measure of this sum was "the value of the land taken plus the depreciation in the market value of the remainder due to the use made of the part taken." *Id.* at 104. *See also 97.19 Acres of Land*, 582 F.2d at 881 (citations omitted) (explaining that severance damages to the remainder, if any, are measured as "the difference in market value of the residue before and after the taking").

    **2. Damages for perceived market negative influences**

In a previous opinion, this court analyzed the law with regard to testimony about damages resulting from perceived market negative influences, such as the perceived danger, or unsafe nature, of pipelines. *See MVP v. 1.23 Acres* (Eagle's Nest), Civil Action No. 7:18-cv-00610 (W.D. Va.), Dkt. No. 55; *MVP v. 6.50 Acres* (Sizemore), Civil Action No. 7:18-cv-00612 (W.D. Va.), Dkt. No. 66. The court will not repeat that entire analysis here, but merely incorporates it by reference. By way of summary, the court held that, to be admissible, an expert's opinions with regard to some hazard incident to the use of the property taken must be supported by some evidence that the hazards are reasonably probable and more than just speculative. Moreover, there must be a nexus between those hazards and/or the public perception in the marketplace—specifically, the marketplace for that property—and a diminution in value of the property. In other words, there must be a causal link between the hazard inherent in the taking and a direct loss in the marketplace. *United States v. 760.807 Acres of Land*, 731 F.2d 1443, 1448 (9th Cir. 1984); *see also Atl. Coast Pipeline LLC v. 0.07 Acres*, No. 3:18-cv-00006, 2019 WL 2527571, at *14–17 (W.D. Va. June 19, 2019) (excluding an expert environmental professional's opinion about a natural gas pipeline's

effect on property value because the analysis was not linked to the specific property's value and was therefore irrelevant to the determination of just compensation).

### 3. Just compensation for temporary taking

Just compensation for a temporary taking is limited to the market rental value of the property subject to the temporary taking. *See United States v. Banisadr Bldg. Joint Venture*, 65 F.3d 374, 378 (4th Cir. 1995); *see also MVP v. 1.89 Acres* (Briarwood), Civil Action No. 7:19-cv-00078, 2019 WL 6467833, at *3 (W.D. Va. Dec. 2, 2019). Defendant bears the burden of proving the amount of just compensation. *See United States v. 69.1 Acres*, 942 F.2d 290, 292 (4th Cir. 1991).

### 4. Expert testimony

Federal Rule of Evidence 702 and the standards established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern admissibility of expert testimony. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Before considering whether a proffered expert's testimony is reliable, the court first determines whether the witness qualifies as an expert. A witness may qualify as an expert on the basis of "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The expertise must relate to the areas in which the expert is expressing opinions. *See Thomas J. Kline, Inc. v.*

*Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989). Exclusion should occur only where all bases for expertise are lacking with regard to the issue for which the opinion is offered, and a proffered expert "need not be precisely informed about all details of the issues raised in order to offer an opinion." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (quoting *Thomas J. Kline, Inc.*, 878 F.2d at 799).

While the test for exclusion may be a "strict one," *Kopf*, 993 F.2d at 377, some type of relevant expertise is nonetheless required. For example, where experience is one of the bases for a witness's expertise, the witness must "explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People*, 27 F. Supp. 3d 671, 674 (E.D. Va. 2013) (alteration in original) (citations omitted). Additionally, a witness's expertise must be tailored, to some degree, to the specific opinions offered and the particular facts in the case; general expertise or knowledge on a broad topic or general field may be insufficient, depending on the facts of a case. *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391–92 (D. Md. 2001) ("The fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him to testify as an expert in all related areas.") (citing *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 247 (4th Cir. 1999)).

After ensuring that an individual qualifies as an expert, this court has an obligation under *Daubert* to act as a gatekeeper and ensure that any testimony concerning scientific, technical, or other specialized knowledge offered in support of a party's claim is "not only relevant, but reliable." 509 U.S. at 589; *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting same). The proponent of the testimony must establish its admissibility, although it need not prove its expert's theory is correct. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *Md. Cas. Co. v. Therm–O–Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998). First, the trial court must ask whether

6

proffered scientific evidence is valid and reliable. *United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000). Second, the court asks whether the evidence will help the trier of fact, which is generally a question of relevance, or "fit." The court must ask if, assuming the evidence is reliable, it will "assist the trier of fact to understand or determine a fact in issue." *Md. Cas. Co.*, 137 F.3d at 783 (quoting *Daubert*, 509 U.S. at 592).

The court's role in limiting expert testimony is important: "due to the difficulty of evaluating their testimony, expert witnesses have the potential to be both powerful and quite misleading." *Cooper*, 259 F.3d at 199 (citations omitted). Indeed, "given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). Importantly, "[t]he gatekeeping role of the district court is particularly pronounced in condemnation proceedings under Rule 71.1." *United States v. 33.92356 Acres of Land*, 585 F.3d 1, 8 (1st Cir. 2009).

**B. MVP's Motion to Exclude Certain Testimony by Dennis Gruelle**

MVP moves to exclude testimony by Gruelle about the fear associated with gas pipelines, based on interviews with brokers cited in his report, who stated, for example, that "[m]any buyers will not purchase properties encumbered by gas pipelines," are "afraid of a gas pipeline," and "do not want to look at properties with gas pipelines." (Appraisal Report of Dennis W. Gruelle (Gruelle Report), Dkt. No. 5-1.) The court has excluded such evidence before and will do so again in this case because "[t]here is no evidence linking the alleged diminution of these property sales to fear and stigma as opposed to other factors." *MVP v. 10.67 Acres* (Doe Creek), Civil Action Nos. 7:18-cv-00609, 7:18-cv-00611, 2019 WL 5929283, at *7 (W.D. Va. Nov. 12, 2019). Also, "anecdotal conversations relating to various fears or perceptions, without foundation, are entirely insufficient

7

as a basis for expert testimony." *MVP v. 1.81 Acres* (Jones), Civil Action No. 7:19-cv-00151, 2019 WL 3945272, at *6 (W.D. Va. Aug. 21, 2019). Defendants cast the issue as being about "marketability," but defendants have no evidence of a reasonably probable hazard and cannot prove a link to any diminution in market value.

MVP further moves to exclude Gruelle's references to opinions and conclusions of other appraisers. Gruelle cites the opinions of William C. Harvey regarding the damages on a property in Nelson County, opinions of William R. Hopkins, Jr., as to damages to a property in Brunswick County, and an appraisal by Jared Schweitzer commissioned by MVP for the purposes of determining security in the main Pipeline case. (Gruelle Report 36; Case No. 7:17-cv-492, Dkt. No. 396-9.)

Regarding the opinions about the properties in Nelson and Brunswick Counties, MVP argues that these opinions are inadmissible because defendant offers no evidence that the properties are comparable to the subject Property. *See, e.g.*, *MVP v. 1.85 Acres* (Lucki), Civil Action No. 7:19-cv-00147, 2020 WL 1067001, at *7 (W.D. Va. Mar. 5, 2020). Defendant contends that the properties are comparable because they were encumbered by either a natural gas pipeline or transmission line easements, and the level of comparability goes to the weight of this evidence, not its admissibility. Nowhere in Gruelle's report, however, does he state that these properties are comparable properties, such that the two properties can be compared to determine diminution in value. *See MVP v. 1.30 Acres* (Baker), Civil Action No. 7:18-cv-00607, 2019 WL 4306981, at *5 (W.D. Va. Sept. 11, 2019) (explaining that in a paired sales analysis, the appraiser "identifies pairs of sales that are as similar as possible for all but one factor. When the sales are compared, the difference in price is best explained by that particular feature that distinguishes the properties"). At the hearing, defendant argued that experts can rely on other experts, and it is not necessary to

disclose every expert relied upon as a witness. *See* Fed. R. Civ. P. 703. Courts including the Fourth Circuit have held that Rule 703 does not "extend so far as to allow an expert to testify about the conclusions of other experts." *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 409 (6th Cir. 2006) (citing *United States v. Tran Trong Cuong*, 18 F.3d 1132, 1143 (4th Cir. 1994)); *United States v. Grey Bear*, 883 F.2d 1382, 1392–93 (8th Cir. 1989) ("We are persuaded that Fed. R. Evid. 703 does not permit an expert witness to circumvent the rules of hearsay by testifying that other experts, not present in the courtroom, corroborate his views."); *Tokio Marine & Fire Ins. Co., Ltd. v. Norfolk & W. Ry. Co.*, No. 98-1050, 98-1077, 1999 WL 12931, at *4 (4th Cir. Jan. 14, 1999) (unpublished opinion) ("[O]ne expert may not give the opinion of another expert who does not testify."). Moreover, Rule 703 does not allow Gruelle to disclose hearsay to the jury unless its probative value "substantially outweighs [its] prejudicial effect." Fed. R. Evid. 703. The court agrees with MVP that hearsay opinions of other appraisers as to damages to different properties are more prejudicial than probative. Accordingly, this evidence will also be excluded.

Regarding the security appraisal by Schweitzer, MVP argues that without live testimony, Schweitzer's appraisal opinion is inadmissible hearsay.[1] Moreover, statements in an expert report are generally not admissible as party admissions where the party did not call the expert to testify in the case. *See, e.g.*, *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 164 (3d Cir. 1995) ("Because an expert witness is charged with the duty of giving his or her expert opinion regarding the matter before the court, we fail to comprehend how an expert witness, who is not an agent of the party who called him, can be authorized to make an admission for that party."); *N5 Tech. LLC v. Capital One*

---

[1] The court has held that security appraisals may be relevant and admissible and are not excludable from evidence "merely because it was an appraisal of the Property for purposes of setting the amount of security." *MVP v. 1.85 Acres* (Lucki), Civil Action No. 7:19-cv-00147, 2020 WL 1067001, at *8 (W.D. Va. Mar. 5, 2020). MVP preserves its argument that estimates of just compensation for the purpose of setting security are not admissible at the trial on just compensation. *See, e.g.*, *United States v. Two Tracts of Land*, 412 F.2d 347 (2d Cir. 1969).

*N.A.*, 56 F. Supp. 3d 755, 765 (E.D. Va. 2014) ("An expert report therefore is not admissible under Rule 801(d)(2) absent a showing—not present here—that the expert was acting as the party's agent or employee or was specifically authorized to make a statement on that subject."). MVP states that that there was no admission that just compensation equaled the amount of the security appraisal. Defendant maintains that the Schweitzer appraisal should be admissible as a party-opponent admission. *See, e.g.*, *United States v. 320.0 Acres of Land*, 605 F.2d 762, 824–25 (5th Cir. 1979).[2]

A statement is excluded from the rule against hearsay if it is offered against an opposing party and is "one the party manifested that it adopted or believed to be true." Fed. R. Evid. 801(d)(2)(B). As noted above, statements in a party's expert report are generally not admissible as "adoptive admissions" where the party did not call the expert to testify in the case. *See Pernix Ireland Pain Dac v. Alvogen Malta Operations, Ltd.*, 316 F. Supp. 3d 816, 825 (D. Del. 2018) (citing *McCormick on Evidence* § 261 (7th ed.)). Instead, an expert's statements "will be regarded as an adoptive admission and thus not hearsay as to the retaining party if the circumstances in which the statement is made, used, or proposed to be used indicate that the party supports the statement as representing its position." *Pernix*, 316 F. Supp. 3d at 824. Here, MVP offered Schweitzer's appraisal for the purpose of establishing the correct amount of security to allow MVP to take immediate possession. Use for that purpose does not constitute a manifestation that MVP adopted the report as its position on the ultimate issue of just compensation in this case. As the court stated in its order setting the amount of security, "[n]ow is not the time to determine the precise amount of just compensation or to determine with certainty the accuracy of MVP's estimated amounts; that must be done after any desired discovery and a trial or other proceeding at which both MVP and the

---

[2] Defendant also argues that Schweitzer's appraisal can be admitted as a prior inconsistent statement. MVP did not disclose Schweitzer as an expert in this case, so the appraisal cannot be admitted on that basis.

affected landowner for each easement may present evidence as to the proper amount of just compensation." (*See* Case No. 7:17-cv-00492, Dkt. No. 486 at 4.) The court also noted that any drawdown of the amount of the appraisal was "at the landowner's peril" and "if the ultimate compensation award is less than the amount withdrawn, the interest-holder will be liable for the return of the excess." (*Id.* at 8–9.) Therefore, MVP's use of the Schweitzer's appraisal for determining the amount of security was not an admission that just compensation equaled the amount of the appraisal.[3]

MVP also moves to exclude Gruelle's testimony pertaining to the opinions and reports of an architect and builder. (Gruelle Report 12, 33.) In his analysis of unity of use and highest and best use, Gruelle relied on the opinion of Sean Horne, L.A., of Balzer & Associates, which indicates "reasonable probability that the relocation of boundary lines allows development of at least multiple residential home sites." (*Id.* at 12.) Later, in his analysis of the Pipeline project, Gruelle cites Horne and Tom Franko of OMNIBUILD: "To access the orphaned piece of land north of the pipeline corridor on the subject property, a driveway would need to meet this and other corresponding design restrictions. Both Sean Horne, L.A., and Tom Franko of OMNIBUILD recognize this as increasing costs to develop the subject property for its highest and best use of high-end residential development." (*Id.* at 33.) MVP argues that this testimony should be excluded because the architect and builder were not disclosed as witnesses, and their respective opinions and reports would be hearsay.

Defendant did not respond to MVP's motion in its brief. At the hearing, defendant pursued

---

[3] MVP also distinguishes cases involving the Uniform Relocation Assistance and Real Property Acquisitions Act, which have been cited in prior cases (but not by defendant in this case). *See, e.g.*, *Wash. Metro. Area Transit Auth. v. One Parcel of Land*, 342 F. Supp. 2d 378, 382 (D. Md. 2004). The court agrees that these cases are distinguishable because the landowners were required to call the appraisers as their own witnesses, and they were not permitted to disclose to the jury that the condemnor had hired the appraisers.

the same line of argument discussed above pertaining to other appraisals: that experts can rely on other experts, and it is not necessary to disclose every expert relied upon as a witness. *See* Fed. R. Civ. P. 703. This argument is rejected for the same reasons stated above, and the testimony will be excluded.

Finally, MVP moves to exclude testimony about the impact of temporary construction, such as the "uncertain" impact of "existing springs, wells, drainage and (especially in sloping areas) soil compaction." (Gruelle Report 35.) Because "compensable loss in the eminent domain context is limited to risks that are inherent in the easement," *Doe Creek*, 2019 WL 5929283, at *7, this evidence is excluded. *See also MVP v. 1.30 Acres* (Baker), Civil Action No. 7:18-cv-00607, 2019 WL 4306981, at *8 (W.D. Va. Sept. 11, 2019).

**C. MVP's Motion in Limine**

> **1. Evidence of fear of pipelines and claims that many buyers would not purchase the property because of the Pipeline**

This evidence is excluded for the same reasons stated above with respect to Gruelle's report.

> **2. Claims that the Pipeline is dangerous or unsafe, evidence of other pipeline accidents or incidents**

For similar reasons, the court has also excluded this type of evidence, and will do so again in this case. *See Doe Creek*, 2019 WL 5929283, at *7 (W.D. Va. Nov. 12, 2019) (excluding evidence because expert did not "rely on market evidence connecting pipeline safety, accidents, and fear and stigma associated with pipeline easements to diminution in value"); *Baker*, 2019 WL 4306981, at *5 (excluding evidence about high consequence areas (HCAs) and the potential impact radius of an explosion area in the event of a pipeline rupture because there is no "evidence that any hazard is reasonably probable and there is no causal link between any hazard, or perception thereof, and a diminution in value of the property"); *Jones*, 2019 WL 3945272, at *5 (excluding testimony

because "an expert's opinions with regard to some hazard incident to the use of the property taken must be supported by some evidence that the hazards are reasonably probable and more than just speculative. Moreover, there must be a nexus between those hazards and/or the public perception in the marketplace . . . and a diminution in value of the property").

### 3. Evidence of alleged impact and possible damages from construction

This evidence is excluded for the same reasons set forth above with respect to Gruelle's report.

### 4. Evidence of other appraisals

This evidence is excluded for the same reasons set forth above with respect to Gruelle's report.

### 5. Examination of Joseph Thompson concerning vacated order

At the hearing, the parties indicated that they may be able to reach a stipulation on this issue. Therefore, the court will deny this part of MVP's motion as moot.

### 6. Evidence of settlement offers and communications

Defendants do not object to the exclusion of this evidence.

### 7. Evidence of amounts paid for easement on other properties

Defendants do not object to the exclusion of this evidence.

## D. Defendant's Unopposed Motions

Defendants move to open and close at trial and sit closest to the jury because they bear the burden of proof. (Dkt. Nos. 16 and 17.) MVP does not oppose this motion, and the court grants the motion.

Defendants also move for a jury view of the subject property during trial. (Dkt. No. 18.) MVP does not object. While a jury view is not required by law, the court agrees that an in-person

jury view is helpful, where practicable, because the jury is to determine the just compensation for the taking. Thus, the court grants the motion for a jury view subject to the conditions during the trial dates regarding logistics (including, but not limited to, access to the property, weather, and transportation), security (including, but not limited to, the health and safety of the jurors, parties, counsel, and court personnel), and time constraints. Should the court determine that an in-person jury view is not practicable at the time of trial, then the parties will have the opportunity to use photographs, or pre-recorded or live video.

### III. CONCLUSION

For the reasons stated herein, MVP's motion to exclude certain testimony of Dennis Gruelle (Dkt. No. 5) is GRANTED; MVP's motion in limine (Dkt. No. 6) is GRANTED as to all matters except regarding the examination of Thompson as to a vacated order which is DENIED AS MOOT; and defendant's motions (Dkt. Nos. 16, 17, and 18) are GRANTED with the jury view being subject to conditions on the trial dates.

Entered: March 31, 2021.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge